The drafting of the plan document in this case has a mistake. It's a mistake which was carried forward through amendment after amendment. It's sloppy drafting, but there appears to be a mistake. And, as drafted, the plain language of the plan, read literally, promises my client a 70% savings of 50% and a actuarial benefit. All three are promised to your client before he retires, right? All three are promised by this plan. Is there anything in the plan which says that a person may get more than one benefit? No, the plan says they'll get one benefit. Is your position that three benefits are one benefit? They could be. Well, is that your position, Mike? In other words, if I say, I'm going to give you a dollar, I'm going to give you a... His question is, is that your position? Is that a reasonable reading of this trust instrument that each retiree, if he can, can get more than one benefit on that plan? Of course not. Well, you began by saying that there was a mistake. What's the mistake? The mistake is, again, writing a plan that promised a 70% benefit, a 50% benefit, an actuarial equivalent benefit when that's not what they intended. So if it's a mistake, then what else is there to the case? Well, this case wasn't analyzed using the rules for mistake. The reason why it's under the rules is that if you say a 70%, 50%, an actuarial equivalent, and you also say the participant is entitled to only one tier of benefits, that's an ambiguous contract. And that's fine. And by ambiguity is a crisis of law, right? Yes. And so, therefore, what is my standard of review? Standard of review is whether or not... I don't want to know what is whether or not. What is the standard? What... Abuse of discretion. Abuse of discretion to whom? If the... To whom? The trustee's abuser. Administrator. Right. And the administrator suggests seeing this ambiguous contract, if you will, an interpretation then of the contract that would suggest all you get is the actuarial. So why is that an abuse? Because the interpretation violates the plain meaning of the words. It's irrational. Yes. No, it isn't irrational. You have already said there's three things you can get out of this contract, and yet the contract says you only get one. And so then what the administrator did is he said, well, let's go back and look at all this evidence of how this was put together. And he said, let's go look, first of all, at what we need to do as it relates to the benefit change notice. Next, what do we need to do as it relates to the summary plan description? What are we going to do with the minutes of the board of trustees meeting? What are we going to do with the communication from the plan consultant? All given to your client. Not him. Your client had them and said, well, given this extrinsic evidence, it seems only likely that all that your client should get is the actuarial equivalent. And now I'm on appeal, and I'm supposed to say that's an abuse? That's irrational? And it's totally out of the question? Yes. Totally inconsistent with law? Yes. How do I say that? What case is that? The plain language rule. No, no. The plain language rule is undone because you've already agreed. The plain language said you got three, and the plain language says you don't get but one. Right. So the plain language rule is gone. You cannot interpret a document to violate its plain language. That's not interpretation. Just a minute. You just told me the plain language would not be, but my good colleague, that the plain language would give you two, three different benefits, and yet the plain language also says you only get one. That made it ambiguous. So your plain language theory, if that's your best argument, you're losing. You better go with another one. Let me suggest you explain this to Mr. Sharp. Is it your position that the client, Mr. Davis, faced with these three benefits, for which he qualified under the plain language of one portion of the client, would choose that which he liked the best? That would be the rule of the Burke case, yes. Correct. So based on something in the language of the trust saying a beneficiary facing three choices could communicate to the trustees which of the three choices he liked the best, and if so, you can't point me to any portion of the trust document. It does not say that. It does not say that. And secondly, are you positing a rule of interpretation which follows the contra-preferential rule, saying this document was faxed in by people and is to be interpreted against the people who faxed it in? Yeah. I don't see if you're reading yourself here. Pardon me. I'm interrupting your presentation. I just wanted to get this to a point. So the problem is if the interpretation requires you to violate the plain language, and you have cases like the Zaffel case. Yeah, but if you have more than one, it says you only get one benefit. If you had more than one, wouldn't you be violating the plain language, except by a different portion of the plain language? Well, I'm going to tell you again, if you can interpret this language without violating its plain language, without violating plain language, that's fine, then you can do it. But if you have to violate the plain meaning of the words in the guise of interpretation, then the rules of interpretation are the wrong set of rules to use. Because interpretation is about you've got a plan which is basically there, there's something that's missing a little bit, and we're going to interpret it because that's what the people meant when they wrote it. But this isn't about interpretation. This is a mistake.  This is a typographical error. The mistake causes an ineluctable contradiction in the language of the Zaffel. Once the contradiction is acknowledged, as we must acknowledge it, then the question becomes how do you interpret an ambiguous language? And the reality is that in California, the rule is when there's an ambiguity, the person charged with interpretation is allowed to look for extrinsic evidence to solve that ambiguity. In this case, they looked at all these alias, which Brother Smith has noted the special summary plan description, all of which is given to your client. And he said, you have one of three choices. I'm not choice, but one of three categories in which you qualify. How is that interpretation by the administrator if it's not somehow violative of another rule, unreasonable? Well, for openers, because if you have words in the plan which are false, promise of God that you're not going to deliver. It's a felony. It's a violation of 18 U.S.C. 1027. No false words in this plan. Of course, you're doing the same. What if language is violated? Because I want you to look for only one portion of the plan. But you can't look at one portion of the plan. We know very well that interpreting contracts, we must look at all of them. Sure. But if you have a contradiction which cannot be resolved by the usual rules of interpretation, I mean, what you've got here is a mistake. And if you look at the rules by which you correct mistakes, 1914, since there is such a case, you get looking at Reformation and the rules governing Reformation, and then you get into whether or not my client reasonably relied and those types of issues. But I know you have nothing in this record to suggest that your client relied. That's right. Well, what? Simply because you brought a lawsuit? Yeah. I mean, look at the representations of this party, if there were any. No representation by the trustee, no representation by the administrator who made this interpretation, no representation by anyone that suggests what you are suggesting happened. Well, this is a risk. So an oral representation by anybody is useless because you can't rely on anybody's oral representation. You're at a risk. You can only rely on the plan document. You cannot rely on the summary plan. You don't have time relying on this plan document when it says three different things. And if I take your analogy, I can give you the actuarial because it's the plain language of the plan, and you're dead. Well, except it's contradicted by another plan. That's exactly what we've been asking you to give us the reason about. We know there's a contradiction. This is the first time you've admitted it, I guess. But the bottom line is you can't use one plan language that's contradicted by another to the benefit of your client. I could say the same thing and make the argument you ought to have the actuarial because the plain language says that. You cannot, in the guise of interpretation, change a 1 to a 5. It doesn't work. But you can change a 5 to a 1? No.  You have to interpret in accordance with the plain language of the plan. And where you have a mistake, and you call the rules for a mistake? I think if you didn't have the one benefit limitation, I think you would have a case that you're now positing that is an interpretation case. But here you have a straight conflict, and what you're suggesting is to select one aspect of the plan over the other. That's not what happened here. The administrator looked at all of the evidence once and realized that there was a conflict and made a reasonable interpretation. And on their abuse of discretion, we're supposed to say, well, we would have done it differently, which is what you're suggesting. But there's nothing in the plan that gives the plan administrator the rights to choose the pension for the individual person. And that's just like the South Lawn. Yes, if the administrator had the right to do it. Yes, sir. If the administrator had the right to. May I read? The administrator has discretion to determine the eligibility for the benefits and to construe the terms of the plan. That's right in the plan. That's exactly what we're getting, construction of the terms of the plan. No, you're getting the change in the words of the plan. That's not construction. I think you can repeat if you want to say something to that group. If I may, what I urge you not to say to that group, and I will decide not to. Okay. Because there are two points that I do want to make. The first is that the elephant in the room in this kind of a case is that if you change the plan language, you could cause all kinds of huge financial effects with lots of people. That's not the case here. This is an instance which affects one person. Secondly, my client's needs basically wore out. He needed to have them replaced. He had flexibility and time. So he looked at the plan, and he said, okay, I'm going to time my knee surgeries, which is my retirement, by when I get the larger pension. So that's how he relies on this language, and that's why if you use rules of mistake instead of interpretation,  did you please call for reformation of the contract? Yes, we did, and the court bifurcated it and did not reach it. Actually, it was a counterclaim for reformation, but it was not reached. All right. Thank you very much. Thank you. Good morning, Your Honors. Anne Bevington representing the Pension Plan and Supportive Trustees. I'm going to talk briefly about this issue of construction, interpretation of the plan. What the trustees did was they followed what they call the prime directive of contracts for legislation, and that is that it's interpreted in accordance with the intent of the presenter, in this case, the plan sponsor. So if a plan or a contract or piece of legislation has plain language, then the language clearly expresses the intent. If it's ambiguous, the intent isn't clear, and then you can look to extrinsic evidence in order to ascertain what the president intended to be able to address, whether it be the green card or the president's intent that was expressed. But the expression is unclear, and you haven't yet been given this information. So in order to ascertain the intent, you can't just look to the four corners of this plan language. You can go outside, which is what the trustees did here, and look at the circumstances surrounding the adoption of the benefit. And as the district court properly pointed out, all of the extrinsic evidence includes that. I think the council's argument is that when you have conflicting positions, you have a choice. You can either say, well, this was a mistake, and he has certain rules. Or you can say, this is ambiguous, which has different kinds of rules. Why would you apply the ambiguity rules here instead of the mistake rules? Well, the mistake is in the way the amendment was forced when it was drafted. Because of the mistake in the language, it created an ambiguity, because the provisions of Section 3.08G, 1, 2, and 3, are inconsistent with each other and inconsistent with, I believe, it's 3.10 of the plan that says you can only get one benefit. So it's the mistake caused the ambiguity. The mistake and ambiguity aren't necessarily two different things. So do we owe abusive discretion review to the administrator and the trustee's interpretation that this is an interpretation resulting in an ambiguous contract rather than one holder for mistake? I'm sorry. I'm not sure I understand that. Well, as I understand, the administrator suggested this was an ambiguous contract. Your counsel suggests that it isn't ambiguous at all. It's a mistake. Do I owe any deference to the administrator who said this is an ambiguous, ambiguous contract rather than analyzing it under mistake? Or is that something I can give no deference to? Well, I think the analysis is the same, but to answer the question, I believe that the court would give deference to the plan administrators because of the construction of the plan language. They look at 3.08 as a whole and consider that this is ambiguous because it doesn't clearly state what benefit this participant is entitled to. And I think we'll learn to do that. There are instances where this whole thing would get all three. Right. And that's common. It's not a victory. It's 3.06. Right. Correct. And I think that the trustee's determination that it is ambiguous is entitled to deferential review. And I think even if a court were to review to know about that issue, they would come to the same conclusion because the trustees did exactly what the court would do if it were to interpret the ambiguous contract. I'm thinking about counsel's claim that this was a mistake rather than ambiguity. I think it's a mistake. Do we simply not enforce the document at all? You enforce any? No. Again, I don't see the distinction between a mistake and an ambiguity. There is a mistake, and the mistake is what wording was chosen in order to express the intent of the plan sponsors in adopting this additional benefit for participants with less than ten years of service. There was a scrivener's error, a drafting error, in how that intent was expressed. That was the mistake. The mistake rendered the plan provision ambiguous. I suppose the question I'm asking is if it's a scrivener's error and the mistake, usually in a document that's submitted by both parties, the document is ineffective. So there's no both. No, I don't think the participants in this plan would be happy if the provision allowing it is a failure. Well, excuse the trustees for appreciating that. But that's not today's case. The question is if there was really a mistake, then there's no benefit to a new plan. No, if there's a mistake, then, okay, if you want to analyze a mistake and ambiguity separately, that way I see some assiduous reformation of the contract. Well, this is only a portion of the plan. It isn't like the whole plan. It's the portion we're talking about. Right, and so. It's not a portion of the plan that's applicable to those that retire early. Right? So why is there no plan if there's a mistake? I think that's Judge Bea's question. Why is it there no plan? Why are no participants? Disability retirement benefit? No. That's what he's asking. Because the benefit wasn't adopted by mistake.  how the benefit was supposed to be given. So I don't think it would invalidate the plan. I think it creates ambiguity. In the district court, the plan did file a counterclaim for reformation, which was bifurcated, and which had the district court made findings along the lines that you're suggesting, Judge Bea, that then the plan would have to pursue a request to reform the plan in order to support the intended benefit for these participants. And if we were to put a ban into the district court to consider a claim for reformation, what would be the decision? Well, it would be unnecessary at this point. It depends. I mean, if this court were to reverse the district court's findings on the plaintiff's claim, then yes, then we would pursue the claim for reformation and not be allowed to do so. That's what I really don't know. It would be preferred, because this is not the type of mistake that would render this kind of provision invalid. It's just ambiguous, and it can be interpreted according to the normal rules for interpreting an ambiguous provision in a document. Thank you very much. Okay. And I have a little time left, so I wanted to briefly address the issue that Mr. Davis belatedly raised in his reply brief about relying on the mistaken plan language in order to time his retirement, that he could have continued working for another year. Right. And the fact that he replied in deciding when he was going to retire is an argument that was not raised in the opening brief. Is there, other than the words in the contract, which is really a repetition of the ambiguity argument or the mistake argument, is there any representation that was ever made to Mr. Davis that he'd be entitled to collect all three? Well, no. The only representation that was ever made to him was the contents of the summary plan description, which actually described disability retirement as intended, that he would be entitled to an actuarially qualified benefit. All right. Thank you very much. Put in your name and location for me. If I may, I believe the facts about my client's reliance on the plan document are in the first two pages of our opening brief. We raised that in the trial court, and that issue was life-forgiven. That's the counter-claim for reformation, so a remand would certainly be appropriate to look at that issue. But I think the problem, the fundamental problem with this case, is interpretation is about what people intended to do, what they expressed their intention to do. Right. What they expressed their intent to do, but what they put on the paper were just that. And when you have a mistake, nobody was intending to do that. And that's why there are different rules for this. Maybe ambiguity is the result of some mistake that is failing to clarify it. So is there one mistake? It can be. There can be instances where the rules of interpretation allow you to give credence to all the language. You don't violate the plain language rule, but you also take care of the mistake at the same time. But this is a situation where you can't do that. So you really have to look at the rules of the state. This is not a bilateral mistake, which would make the contract void. This is a unilateral mistake on the part of the drafters of the plan. Unilateral mistake. It's a unilateral mistake. Yes. It's a mistake by the plan sponsors. You know, and without a state inter-risa, where the ISIL is very clear, you can't rely on what people tell you. You cannot rely on the summary plan description. That's Cigna versus Amara, 2011. I think we cited it in both of our briefs. So the only thing that the plan participants can rely on is the plain language in the document. And if there is a mistake there, I think we should certainly afford to get externals right. Thank you. Thank you. I appreciate it. This is self-explanatory. Attention to ourselves, citizens of the country and your peers. We'll be still there after the next case, which is Gray versus Muheed Kirk.
judges: Bea, N.R. Smith, Robreno